The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the 4th Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. Passes the United States and the Honorable Court. Thank you. Be seated. Certainly a pleasure to be in Judge Blatt's courtroom and we're happy to hear arguments in the first case, Counsel. Your Honor, I wasn't sure if we should speak. Thank you. May it please the Court, my name is Troy Shelton and I represent Tim Capps, the appellant in this appeal. This case is about requiring contracting parties to honor notice and cure rights. Here, Capps negotiated a contract that protected him in case of an early termination. Newmark was always free to terminate the contract whenever it wanted and for whatever reason without calls. But if it did so, then there would be serious financial concessions that Newmark would have to make to Capps. Newmark could avoid that pain and expense, however, if it terminated Capps for calls, and that is what it did. Yet the contract here limited for-calls terminations. It required a material breach of contract and written notice and an opportunity to cure. Here, Capps was denied notice and a chance to cure. Well, New York law doesn't require strict compliance, does it? I'm sorry, Your Honor. New York law does not require strict compliance on the curability and so forth. My understanding, Your Honor, is that it does require strict compliance with the notice and cure provision. There is an exception for breaches that are incurable, but the written notice, for example, an oral notice would never be sufficient if the contract requires written notice. That's my understanding of New York law, Your Honor. Well, didn't the judge find it was incurable? Yes, Your Honor, the judge did find that it was incurable. It's unclear what the district court understood incurability to mean in this case. Under New York law- Does it count? I mean, your client tried to steal from his employer. It seems like to me that that's a hard one to cure. I mean, even if you give the money back, you still tried to steal from your employer, right? Based on the findings, I understand you claim he didn't try to steal, but they found that he tried to steal from his employer. How is he supposed to cure that? I mean, once you've tried to steal, it's not like giving it back actually cures the problem, right? I understand that issue, Your Honor. I think that that issue goes more to the issue of materiality. And we don't contest the materiality of the so-called equity clause scheme, but we do contest whether that was curable or not. Well, but that's what I'm trying to understand, right? I mean, the problem here is whether he was successful in stealing or not might be curable. He might be able to return the money he stole. If I took your wallet, I can get it back to you. But I still tried to steal it. And if I tried to steal it, I can't undo my attempt, right? Yes, Your Honor, but the case law doesn't require sort of restoring the status quo ante. That is not what curability requires. Instead, to cure a breach of contract means to stop the offending conduct and to begin to substantially perform. Do you have any example where somebody found that you can cure the breach of contract where the breach is I tried to steal from you? That seems peculiar. Well, you know, when you look at this particular contract, Your Honor, there were three provisions that allowed termination for calls. There are sections 3A, 3B, and 3C. 3C allows termination for calls if caps, for example, had committed a felony and been convicted. Section 3A. A felony like like attempting to defraud his employer? Not an attempt, but an actual conviction. Any kind of any kind of felony, Your Honor. Section 3A allow termination for calls if if caps had attempted to defraud or embezzle from Newmark or its clients. Now, Newmark has never relied on that provision. Their termination letter didn't rely on it. They didn't argue that provision to the district court. Let me ask you this, counsel. How is caps failure to prove termination without cause not functionally equivalent to Newmark proving termination with cause? Your Honor. So under New York law, there's sort of a special rule that applies when a party is claiming improper termination. Under New York law, all the terminated party has to come in and do is say I had a written contract. It was terminated before it ended and it was terminated without noticing a chance to cure. After they prove that, the burden then shifts to the terminating party to prove cause for termination because it's an affirmative defense. But aren't you over reading that order? I'll give you that. There's a little confusion in the first part of the order about allocation. But later in the order, the judge specifically finds that Newmark proved for cause. Is that right? It's correct that she finds that there was cause. But the problem is that because of the misallocation of the burden of proof, essentially, when a court, any kind of fact finder is looking at the facts, they essentially put on lenses about how they view the facts. In a case that was as close as this, we don't know if the burden had been correctly allocated, how the district court would have come out. Well, this is a bench trial. And the trial judge is going to get a lot of discretion from us as to what the facts are. Don't you understand that to be the law? Absolutely, Your Honor. I understand that. Well, as a district court judge myself, switching gears here to another issue, the first concern I've got here is subject matter jurisdiction. And the information before us doesn't allow us to confirm the existence of diversity jurisdiction. Can you give us some more information to establish the citizenship of the parties before we get into too many other issues? That's fine, Your Honor. At the beginning, there were numerous other parties that were involved. Some of them were dismissed. Frankly, I believe Newmark might be an LLC or maybe they were at the time of this case. And I understand that would determine, be based on where its members lived. And unfortunately, I don't know that information. It wasn't contested below. You didn't allege it, right? I mean, you allege that their principal place of business was in Georgia, which would be helpful if they were a corporation. But it doesn't matter if they're an LLC, right? That's right. You need to look at the location of the members. And unfortunately, I don't have that information. And we don't we don't know where the citizenship of Newmark Southern Region LLC is. I do not, Your Honor, because, again, it would it wouldn't be based on the principal place of business to be based on the location of the members. My assumption is that one of one of the two is a wholly owned subsidiary of the other. But that's merely an assumption on my part. Who are the members of Newmark? Again, Your Honor, I'm sorry. I have to defer to Newmark's counsel for that information. Let's switch subjects for you a little bit and ask a different question. So there's a significant discussion, which I understand about whether North Carolina would recognize aiding and abetting a breach of fiduciary duty. Hypothetically, except for me that we find that they would not for my hypothetical. Why would we think they would then recognize a civil conspiracy to breach of fiduciary duty? Why wouldn't the analysis for those two questions be the same? So, in other words, whether you're aiding and abetting a breach of fiduciary duty or whether you're conspiring to accomplish a breach of fiduciary duty, the analysis looks quite the same. And so why would we not think that North Carolina, whichever way they think about those questions, they think about them the same way? I agree with you that they would likely think about them the same way. I think that they're likely to. There is a I believe that civil conspiracy has been used when the object of the conspiracy was the breaching of fiduciary duty. So I mean, so can you point me to a case that did that? So we found a few. We didn't find any in the briefing. We found a few that that rejected civil conspiracy based on breach of fiduciary duty. But none that actually have actually held that such a claim was valid. Do you have a case where a court in North Carolina actually did that? I'm sorry, I'm not at the tip of my fingers, Your Honor, if I'm happy to submit supplemental briefing on that. But I would note that often fiduciary duties arise from a contractual relationship. And so when that happens, the tortious interference with contract and the aiding and abetting the breach of fiduciary duty become very tight. And it was essentially the same facts that were being alleged in this case. So it strikes me as unusual that North Carolina would recognize intentional interference with contractual relationship on the one hand. But that contractual relationship was a fiduciary duty. Then the court would essentially immunize that kind of misbehavior. New York as excuse me, North Carolina, as many other states, are highly protective of fiduciary duties. So it strikes me as unusual that a court would say, well, if you know that someone who is a fiduciary duty and you help the fiduciary breach that duty, it's no problem. But would you agree that if they don't recognize the aiding and abetting a breach of fiduciary duty, they would also not recognize a civil conspiracy to violate a fiduciary duty? I think that there's simply different questions. So I'm not sure that I can quite agree that because we fell in one that we fell in the other. There are some different policy considerations for each one. They have different elements. I take your point, though, that that those three claims are I believe that they're they're animated by similar policy concerns. But I believe those policy concerns favor us as opposed to if we got if we determined that North Carolina did recognize the civil conspiracy to breach of fiduciary duty, as you've alleged. Can you help me understand how you've plausibly alleged an agreement? And I understand that that's not the rationale that the district court gave below. But when we look at the complaint and sort of in light of Twombly and the standards that we have for recognizing a plausible agreement, can you help me understand how you did that here? I think it's pretty much undisputed that there that there was some coordination going on between Katz, Harris and Newmark. So to step back and look at the timeline, there was a dissolution by Greg Katz, the co-partner in the CTG partnership. And at that point in time, Newmark steps in. In part, they're there. They're talking to Mr. Katz. They're talking to Harris as part of what begins as an HR investigation. But they're also involved in the winding up of the affairs. So without a doubt, there's communication. That's like that's the whole idea that like parallel conduct is like not enough. Yes, they're all involved because they have relationships. But to suggest that there's a an agreement between Katz and Newmark for Katz to violate his fiduciary duty, we've got to show that agreement. And to show that they were both acting independently in ways that might be or might not be consistent isn't enough under Twombly. You've got to have more than that. I understand. Yes, that's correct, Your Honor. The parallel conduct normally involves no communications between the parties at all. Right. But in this case, we know that there was significant communication going on between Newmark and Harris. They were talking both as part of this HR investigation, but they're also talking with Harris, having separate conversations with Harris. Lou Alvarado, for example. So I understand that they were working and you claim that they were talking to each other. I just want to understand what the universe is. What do I need to consider? What other allegations in the complaint do I need to consider in doing the Twombly analysis on the agreement? Whether they had a similar motive to act together to cooperate, they were going that essentially the allegation is that they wanted to continue working together without Katz. They could both profit if Katz was cut out of the picture. But on the complaint, you allege, I mean, I'm just looking at the complaint. I understand during the trial, it came out that maybe your client was not exactly as alleged in the complaint. But in the complaint, it says he's like super productive, making a lot of money. Why would Newmark have any incentive to cut him out? If he's as productive and helpful as you allege that he was and he wasn't stealing money from them, why would they have any incentive to get rid of him? I don't see their motive to conspire with Katz at all. I think that they preferred to continue working with Katz at the end of the day and not with Katz. And the rest of the CTG team essentially wanted to... Why would that be? I mean, if you've got two productive members, like maybe they can't work together anymore. But in fact, like Newmark went to your client before they found out he was stealing from them and said, we want to give you a new contract. Not as part of this agreement with your former partner, but we just want you to keep working with us in a different capacity. And they offered him a new job at a raise. So what's their motive? That's what I'm having trouble with. If they're doing that, what is their motive to undermine him in any way, shape, form or fashion? Well, I think that would be separate from the question of whether there was a civil conspiracy. But the motive matters, right? We've said before that we look at motive and we don't... We're not going to presume an agreement in the lack of any real evidence of an agreement where there's no motive to enter that agreement. And I don't see Newmark's motive to enter that agreement. Well, I think... Alleged agreement, I should say, obviously. There were also pending deals that were going on and they were having to determine how the commissions were going to be distributed during the windup phase. Are these the ones that your client was stealing the commissions on or are there others? No, Your Honor. These were other deals that had already closed or were in the process of closing. There were many other deals that were going on. Right. And they want him to keep working on them, right? That's why they offered him a new job, right? They offered him an extension and a new job because they wanted him to keep working there. So I'm still having trouble understanding their motive to enter this agreement to breach the fiduciary duties of the partnership. I think the motive first starts with Katz's motive. Katz wanted to... He wanted those commissions... I understand Katz's motive. Well, I think Newmark's motive is direct. So Katz's motive was he wanted... Those commissions were going to have to be split through the CTG partnership. He wanted most of those commissions to flow to him. Newmark decided they would prefer to keep Katz happy as opposed to Katz. And so they were trying to funnel those commissions to Katz as opposed to Katz. And that is how they're... That's the motive of the civil conspiracy. Is there anything else that you would want me to look at to think about the plausibility of having alleged a conspiratorial agreement here? I don't think so, Your Honor. Thank you. I wanted to turn back to one issue of curability that Your Honor had raised. Under our definition, again, a curability is asked whether it's possible to stop the offending conduct and whether it's possible to substantially perform going forward. So, Your Honor, what I wanted to note is that most of the time under this contract, most breaches I believe are going to be curable. But there are a handful that are not curable, and I think that it's helpful to look at those as a contrast and juxtaposition. First, a status-based breach is usually not going to be curable. That's a felony conviction. Like that being... Well, one status would be it's like a thief. Usually it's adjudicated misfeasance, which is what the Second Circuit used when it was applying New York law in the Jeffrey Hyundai case. They said the difference was that this was adjudicated misfeasance. It wasn't simple misfeasance. So that's why it was a status change that was incurable. Another issue would be an inability to cure within the cure period. For example, this contract provided 30 days of cure. If it wasn't possible for caps to resume performance, you know, in a construction case, for example, someone runs out of money and they can't continue performing within 30 days, then that would be an incurable breach, just on those facts. And finally, as I was saying earlier, if the contract simply doesn't provide cure rights, which is what this contract did. It said if you committed fraud or embezzlement... Thank you, Counsel. We've got some time on rebuttal for you, I think. Thank you, Your Honor. Thank you, Counsel. If you don't mind starting with Judge Hendrick's question about the LLC and its members and their citizenship. Absolutely not. The LLC that is the appellee, which is Newmark Southern Region, is not a citizen of North Carolina. Its members are corporate entities venued in Delaware and New York. And so there has never been an issue about diversity of citizenship among the parties. If you'd be so kind as to help us assure of that by submitting a letter of the members of the LLC and information about their citizenship.  Thank you, Counsel. Counsel David Paul, by the way, Assistant General Counsel for Newmark, appearing for the appellee. May it please the court and good afternoon. Thank you. Counsel started and ended with curability. So I'd like to tackle that issue first. Judge Richardson, you asked some very pointed questions, which go right to the heart of the legal deficiencies in the appellant's position. This issue is not curable. The facts of this case demonstrate that Mr. Capps' conduct was absolutely not curable. As a matter of New York law and under the clearly erroneous standard that applies to the district court's factual determinations, this court should affirm unless you are convinced and with conviction that the trial court aired in her 47 pages of factual findings, which detail the attempted misappropriation of corporate assets that went to the heart of the party's contract. If you think about it, Capps' argument on this curability question is pretty absurd. His argument is that a company who discovers that its broker is engineering a scheme to defraud it of the gross profits of the contract, the fundamental benefit of the bargain, who then stops once he's and then lies about it and then stops the scheme only because he's caught, that that somehow provides him with the right to continue under the contract and takes away Newmark's right to fire them for costs. That's absurd. There's not a case in this record or in the land that supports that rationale. So what's so his his argument I take is, you know, based on the language of of cures as well as as long as I stop doing it. And there are some New York cases that seem to say, you know, stop that that's sufficient. So what helped me think about the legal side of this, like why? What do I look at in New York law to understand the absurdity that seems sort of somewhat obvious, but is maybe less obvious when you read the case law? So there are two things you need to look at, Your Honor. First is the standard of review is that is clearly erroneous because these are factual issues. So, number one, you're deferring to the fact finder. So so appellate has to reach a very high bar of demonstrating that there was a gas not. Number two, the question is, could this be cured? Could he stop? The case law out of New York demonstrates that a material breach that contains this kind of dishonest and patently offensive conduct that goes to the heart of the party's contractual relationship is material and incurable. And it provides the counterparty of the contract, the absolute right to terminate without any. That's what we're looking here. Wait. Yeah. Give me one of the two. Like, you just gave me two cases, but I was talking. I didn't hear where the two that you think are closest to telling us this idea that, you know, if you attempt to steal from somebody, stopping stealing hasn't actually cured. For like a mirror are directly on point. Both of those cases involved 711 franchises. I'm not sure what was happening with 711 franchises in the 1990s in New York. But there are two similar cases where the franchise or was deprived of its profits under the contract because the franchisee was under reporting its sales by an artificially inflating costs. So there were deductions and they were pocketing the rest. That's very analogous. And the court found in both of those cases that those breaches constituted dishonest patently improper conduct and went to the heart of the matter that avoided the contract counterparty from obtaining the benefits, the fundamental benefits of the bargain under the contract. And they were material and incurable breaches. The other thing that you should consider is that's the case law. Yes, for legal concepts. Another factual issue you should consider is that it is not disputed that Tim caps is contract does not provide an absolute cure, right? The contract provides a cure right only to the extent the breaches are curable. These breaches are not curable as a matter of law. Newmark was not required to provide an opportunity to cure because they are not incurable. And the facts that were presented at the weeklong trial before Judge Flanagan firmly support that. And so you have those are the reasons why there is the curability analysis confirmed to this court should affirm. Judge Floyd asked a question about burden shifting, and he stated it the right way. And that is that under New York law, it is black letter law that a plaintiff, such as appellant here, who is asserting a breach of contract claim, bears the burden of demonstrating substantial performance. That is a separate question from does the defendant have to demonstrate cause? I believe Judge Hendricks made a similar point about aren't they two sides of the same coin, which is exactly the factual conclusion and legal conclusion that Judge Flanagan drew. But in reality, they are actually two separate things. And so when when in the papers, appellant argues that the district court somehow improperly shifted the burden of proof onto the plaintiff. That's simply not true. There's nowhere in the opinion does Judge Flanagan state that Mr. Capps bore the burden of demonstrating lack of cause. What the judge did say is that he bore the burden of demonstrating substantial performance, that he failed to do so, and that his failure to perform his obligations under the contract constituted material breaches of the contract and constituted cause. To your point, Judge Hendricks, they are two sides of the same coin. That is not always the same. That is not always the case that the facts answer both questions, but they certainly do in this case. An example of where they wouldn't and facts wouldn't entirely overlap is where there is a breach that sorry, not a breach. There is a substantial performance of a contract, but then the reason for cause was something unrelated to that. Council mentioned the felony conviction. Mr. Capps' contract provided that one of the multiple basis of cause was if he were to receive a felony conviction, that would constitute cause. So in that scenario, Mr. Capps could come into court if he contested that termination for cause. He could demonstrate that he complied with all of his obligations and company policies. And then he could contest that the felony conviction was valid or whatever he would contest that the cause itself was improper. In that scenario, Newmark would bear the burden of demonstrating the propriety of the cause based on the felony conviction. That's simply not the case here because the two are absolutely inextricably intertwined. And that's why if there is any concern about burden shifting, I think Your Honor mentioned that it was unclear that the judge wasn't explicit about the burden, at least in the initial part of the opinion. If there is any concern, it's of no moment. There is no error because the factual findings rendered by Judge Flanagan are entirely outcome determinative. She rendered... Can we can you shift to the civil conspiracy question? And I had two questions for your colleague, and I want to give you a chance to address them. One is, do we see or do you have sort of case law addressing civil conspiracy to violate a fiduciary duty as being recognized under North Carolina law? And then secondarily, assuming that there is such a cause of action, do you think that the complaint plausibly alleges... I mean, I know you think it doesn't, but why do you think that the complaint does not plausibly allege an agreement under Fombley and that line of case law? Absolutely. Let me add to that question because they're all coming together. Can tortious activity against CAPS serve as a basis for CAPS civil conspiracy claim against you, Your Honor? No, but it doesn't have to be a conspiracy to aid and abet. It can be a conspiracy to breach the fiduciary duty. You take out the aid and abetting piece, right? And so it's a conspiracy. Instead of aiding and abetting, it's conspiracy. Correct. Right? And so they are two different questions, right? I understand. And there's plenty of case law, and you can assume for the argument that they don't recognize aiding and abetting breach of fiduciary duty. But what I don't see is the same discussion or thoughtful engagement on the question, is there a conspiracy to breach the fiduciary duty? Only if there is an allegation in the complaint, which is obviously not here, but only if there's an allegation stated in the complaint that the co-conspirator, the company, made some unlawful act in furtherance of the conspiracy to breach the fiduciary duty. The starting point is that Newmark does not have any fiduciary duty to Mr. Capps. There's no allegation of any. That's easy. There is an allegation that Katz and Capps owed fiduciary duties. That was a question in the case. It's been dismissed and settled. Well, in regards to the civil conspiracy, another question I've got is the court effectively held that a tort claim against Newmark must underpin the conspiracy claim. But doesn't the law simply require that a wrongful act by an alleged co-conspirator would qualify? It could. The first stopping point is the court's conclusion, which is correct, that a civil conspiracy claim cannot be maintained absent a valid tort claim against that joint tortfeasor, the company in this instance. On the line of cases that there is a narrow line of cases, Your Honor is correct, where the acts of the joint tortfeasor could serve as the basis for a claim. But here, those allegations involve Mr. Katz and Mr. Harris and their moot because Mr. Capps settled with Mr. Katz and Mr. Harris and he dismissed all those claims. So there are no claims of any nature. You can't be a joint tortfeasor and not be in the case, right? You don't have to sue everybody that's a joint tortfeasor. They typically do, but you don't have to. That's true only if the plaintiff alleges unlawful acts by the defending. And we don't have that. And the question was, can Katz rely on the alleged bad acts of Katz and Harris, not of Newmark? When the district court dismissed Katz's civil conspiracy claim, Katz's claims against Katz were still pending, weren't they? Yes. And then a year later, the individuals all settled. And so what I'm saying is it's moot because those cases, those claims are valid. They've been settled and dismissed. And if you think about it, a conspiracy claim is really assigning liability for the bad act. It's making sure that the victims are not limited, whether it's civil or whatever, limited in their recovery in the sense of only alleging bad acts by one when multiple people are involved. And if the basis of Mr. Katz's claim for the tort was really derived from his claims against Katz and Harris, he has already resolved that and potentially recovered on that. But he only resolved the claim against one party, right? So his theory is, listen, you two guys agreed to deprive me of my rights, fiduciary rights. One of you is reasonable, and so you settle. The other of you is unreasonable, and so you don't settle. But that doesn't make the claim go away against the unreasonable one, right? That claim still remains. It doesn't make it moot, right? Because he was a defendant at the time and decided to settle. It wasn't dismissed. If it's dismissed, that's a different story, right? But to your point, what you're saying, I think, Your Honor, is at the pleading stage, they were still viable. And I understand that. But that claim can only continue against Newmark if the plaintiff alleges sufficient allegations of wrong acts by Newmark. And he has not. This goes to the second part of your question that you posed for me a few moments ago that you were asking counsel about. There are no wrongful acts on the part of Newmark, which is why one of the reasons why Judge Floyd, why the judge properly dismissed the tortious interference claim, which had that claim been proper and allowed, then that tort against Newmark could serve as a basis for a conspiracy claim. Because then you have a valid tort claim against the joint conspirator. But in this case, the judge Flanagan found that there was not a properly stated one, and she dismissed it properly as a matter of law for the simple fact that the allegations stated in the complaint showed that Newmark's alleged conduct, even at the pleading stage, could not have been but for a cause of Katz's termination of his contract with Katz because under the timeline alleged in the complaint, Katz dissolved the partnership with Katz before Newmark was alleged to have ever been involved in working with Katz and Harris to Katz's detriment. So imagine for a minute if we found the district court erred in dismissing the civil conspiracy claim at the motion to dismiss stage. With the court's finding, could we rely on the court's finding on the tortious interference to find that error to be harmless, given the sort of close nature here, or are they really sufficiently separate because one is really about an agreement, and the other is about actual interference? You understand what I'm trying to get at? I think I do, Your Honor, and I think that you can rely on that as being harmless. I'm not sure that that works. Help me understand how we would do that because they're fundamentally different elements, right? And so the court didn't address the agreement aspect of a conspiracy charge. Right. The allegation on the conspiracy claim would be that Newmark tortiously interfered with the contract by colluding with Katz and Harris to induce Katz to cancel the partnership, the alleged partnership. But if your hypothetical, Your Honor, which is not entirely hypothetical, but the tort claim was actually dismissed at the pleading stage, that tort is now gone and cannot serve as the basis for a civil conspiracy claim. So then if you found that the conspiracy claim is based on the breach of fiduciary duty, which could have happened before the dissolution of the partnership, but it could also happen during the windup of the partnership, right? You still have fiduciary duties during the windup, right? And I get we're a couple of levels down because we're assuming a few things. But on the narrow question of do you have fiduciary duties during the windup? The answer to that is yes. So while the inducement claim doesn't work because of the timing of Newmark's actions, perhaps the fiduciary duty claim, if it can serve as the basis of a conspiracy, would suffice. It could had plaintiff actually alleged that Newmark engaged with Katz and Harris during the windup. Appellant argues that in his papers, but the complaint actually does not say that. The complaint actually says that the tortious conduct between the company and the other individuals occurred pre-windup. It occurred at the point in time of inducing, allegedly inducing, but based on the fact that it couldn't, allegedly due to breach or dissolution of the partnership, not the windup phase. The complaint says nothing about the windup phase. And so what counsel is trying to do is he's following your logic and looking to amend his pleadings on appeal. And that's obviously way too late in the game for that. So your contention is a timing question as to when Newmark entered the dispute. It's timing in the sense that the timing of the factual allegations by the plaintiff matters quite a bit. And so, and that's part of what Judge Flanagan found when she dismissed the tort claim. Because in order for the tortious interference claim to continue, Newmark's alleged conduct has to be plausibly the but-for causation of termination of the contract. And it just could not have been based on the timeline. And that was her rationale, which was sound and should be affirmed along with the other rulings. I think I've answered most of your other questions. Judge Floyd, you made a comment that I'll close with. And that is that this is a bench trial in front of an experienced district court judge. She was the sole fact finder. Her ruling is subject to deference from this court unless you have a strong conviction that she absolutely got this wrong. All of these issues, but for the 12B6 determinations, all of the other issues on materiality and curability, these are fact-intensive issues. These are issues, this is classic defer to the district court stuff where you defer to the judge who can look the witnesses in the eye and assess the credibility and weigh their testimony against the documentary evidence, which may or may not conflict with their testimony. And you see evidence of Judge Flanagan undertaking a very conscientious process in making those credibility determinations when you read her 52-page opinion. Because she actually takes the time to connect the dots in a very reasonable way between the witnesses' testimony, the documents that were submitted, the motivations of the parties at the time. Noting that Mr. Katz had become anti-company and was sort of motivated to go pursue this equity scheme for his own benefit and deprive the company. Those are all things that are woven into a very well-reasoned and thoughtful opinion that should be affirmed for all the reasons. Thank you. Thank you, Councilor. I'd like to resume the discussion of curability. It's not our position that Newmark was forced to work with CAPS. If they didn't want to work with CAPS, they were always free to terminate CAPS without calls. Our point is simply that this conduct was curable. It was curable as to Hopper and Sinter. Tell us about the 7-11 cases. Except for a minute, and I understand you don't like it, but except for a minute that he tried to steal from his employer, like in the 7-11 context. Why don't those two cases suggest to us that trying to or actually stealing from your employer or franchisor in that particular scenario, that that's uncurable? There are several problems with those two cases, which are both Southland v. Muir and Southland v. Froelich. First, those cases are actually not about termination. They're about rescission. There's a special rule that some courts have applied. They say, well, we're not even going to look at curability rights if you're seeking rescission. If something's so bad, then we'll just set aside curability rights. You rip up the contract and set the parties back to where they were before the contract was entered into. Those are the Southland cases. I would refer the court to the case of Manpower v. Mason, which does a really good job explaining the difference between curability rights for rescission and curability rights for termination. It doesn't discuss those two cases exactly, but it's talking about the same points of law and those same cases that those cases were relying on. There are no New York cases that have ever cited either of those Southland cases. It's not even very clear to me that those cases represent New York law. I'll give you the same right. What are the cases you want me to look at to suggest that an attempt to steal can be cured by stopping stealing? First is the Manpower case. I'll set that aside. The next closest case is a case called Simcoe, where it's not exactly about deceptive conduct, but it is about some safety problems with some equipment that was supposed to be provided. The provider of the safety equipment terminated them. They said, we've lost faith in them. We can't trust this kind of equipment. It's the same element of trust. They said, we can't trust them. The court said, no, there are no lost confidence, lost faith cases under New York law. That is not a ground for ignoring cure rights. You still had to give them written notice and a chance to cure, even if you've lost faith in them, because that's the deal that you struck. That's our point, that this is the deal that the party struck. They didn't have to give any cure rights at all under this contract. I see my time is up, Your Honor. Unless there are any other questions, I'd ask that you reverse the judgment and reinstate the claims dismissed at the Rule 12 stage. Thank you, counsel. As some of you know, we normally come down and greet counsel, at least as of yet. We have not resumed that tradition in the Fourth Circuit. We certainly hope we do so soon. But we appreciate you being here, and we certainly appreciate your argument. The court will take a brief recess. Thank you. Thank you.
judges: Julius N. Richardson, Henry F. Floyd, Bruce H. Hendricks